Louis V. Spiker, ISB No. 8281
MILLER NASH LLP
950 W Bannock St., Ste. 1100
Boise, ID 83702
Telephone: (208) 609-3798
Email: louis.spiker@millernash.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOMES WITH AUTOMATION INC., a New York corporation,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BUILDERS FIRSTSOURCE, INC, a Delaware corporation,<br><br>　　　　Defendant. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff HOMES WITH AUTOMATION INC. ("HWA"), for its complaint against defendant Builders FirstSource, Inc. ("BFS"), alleges as follows:

## INTRODUCTION

1. HWA brings this action arising from defendant BFS's unlawful conversion of equipment purchased by HWA from House of Design LLC ("HOD"), an Idaho limited liability company, which purportedly is indebted to BFS.

2. As alleged below, BFS's actions constitute unlawful conversion and intentional interference with HWA's contract with HOD, and the violation of HWA's rights in and to the equipment under Idaho law, the place where the equipment was manufactured and assembled by

HOD.

3. Under the guise of liens filed by BFS against HOD relating to HWA's equipment and, upon information and belief, the equipment ordered by other customers, BFS appropriated the assets and business of HOD and caused it to become insolvent, resulting in the filing on December 1, 2024, of an Involuntary Petition in bankruptcy against HOD in the United States Bankruptcy Court for the District of Idaho, Case No. 24-00834-BPH.

4. In addition, BFS's actions are part of its scheme to retain and increase effective market control in the relevant market for the production of trusses used in the construction of new homes and prefabricated homes, and as such violates the Sherman Act, 15 U.S.C. § 2.

5. By reason of the above, HWA demands judgment for the cost of the equipment it purchased, i.e., $2,250,000.00, trebled pursuant to 15 U.S.C. § 15, plus interest, and reasonable attorneys' fees.

## THE PARTIES

6. HWA is a corporation formed under the laws of the State of New York, with its principal place of business located at 5513 12th Avenue, Brooklyn, New York 11219.

7. Upon information and belief, BFS is a Delaware corporation with its principal place of business located at 6031 Connection Drive, Suite 400, Irving, Texas 75039.

## JURISDICTION AND VENUE

8. This court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 and 15 U.S.C. §§ 15 and 22, and supplemental jurisdiction over all state and common law claims pursuant to 28 U.S.C. §1367.

9. In addition, this Court has jurisdiction over this action pursuant to 28 U.S.C.

§1332 *et seq.*, because the parties are citizens of different states and the matter exceeds the sum or value of $75,000.00, exclusive of interests and costs.

10. Venue is proper in the United States District Court for the District of Idaho, pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events, acts, or omissions giving rise to HWA's claims occurred in the District of Idaho.

11. Upon information and belief, BFS transacts a substantial amount of business in Idaho.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

12. HWA is engaged in the business of installing prefabricated and on-site construction of homes in the New York area.

13. Upon information and belief, BFS is the largest U.S. supplier of building products, prefabricated components, and value-added services to the professional market segment for new residential construction and repair and remodeling. It offers customers manufacturing, supply, delivery and installation of a full range of structural and related building products. In 2024, BFS reported that it operates in 43 states with approximately 570 locations across the United States. It services customers in the production of roof and floor trusses, wall panels, stairs, vinyl windows, custom millwork, and pre-hung doors. BFS also distributes lumber and lumber sheet goods and specialty building products.

14. In its Form 10K filed with the Securities & Exchange Commission in 2023, BFS states that it is "a leading supplier and manufacturer of building materials, manufactured components and construction services to professional homebuilders, sub-contractors, remodelers and consumers." It also refers to itself as "the largest building product supplier," with over $10 billion in sales. BFS's Form 10K for 2024 states that BFS offers "an integrated solution to [its]

customers by providing manufacturing, supply and installation of a full range of structural and related building products. [Its] manufactured products include . . . factory-built roof and floor trusses ....... "

15. Starting in the spring of 2024, HWA's representatives had discussions with representatives of HOD regarding the HWA's purchase from HOD of a roof truss system (the "Equipment").

16. Through a number of visits by HWA's representatives to HOD's facilities in Idaho, these discussions evolved into HWA's order of the Equipment from HOD.

17. Over the course of several months, HWA paid HOD the sum of $2,250,000.00.

18. Ultimately, the order was memorialized in an August 29, 2024 contract between HWA and HOD, regarding HWA's purchase of the Equipment.

19. After HWA purchased the Equipment from HOD, BFS sent to HOD at its offices in Idaho a "Notice of Default and Lien on Specified Asset, and Demand to Assemble Collateral," dated September 6, 2024 (the "Notice").

20. Upon information and belief, the Notice arises from a $10 million loan it made to HOD, on which HOD almost immediately defaulted as BFS, in advance of making its loan, knew it would.

21. Also on September 6, 2024, without notice to HWA, BFS directed HOD employees not to release the Equipment to HWA.

22. BFS took possession of the Equipment and later refused to release the Equipment to HWA, despite demands from HWA that it do so.

23. Upon information and belief, BFS has assumed and taken over the entire business

of HOD, including its proprietary intellectual property.

24. BFS's actions have contributed to an involuntary bankruptcy being filed against HOD.

# FIRST CAUSE OF ACTION
## Conversion

25. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1-24 above, as if fully set forth herein.

26. Idaho Code § 28-9-320 provides in relevant part, with certain specified exceptions, that "a buyer in ordinary course of business . . . takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence."

27. "Buyer in ordinary course of business" is defined in Idaho Code § 28-1-201(b)(9) as to include buyers "from a person, other than a pawnbroker, in the business of selling goods of that kind."

28. Idaho Code § 28-1-201(b)(9) also provides that a buyer in ordinary course of business is defined as one who buys "in good faith, without knowledge that the sale violates the rights of another person and in the ordinary course."

29. With respect to the Equipment, HWA was a "buyer in ordinary course."

30. HOD was in the business of selling goods of that kind, i.e., truss systems, and HWA acted in good faith with respect to the purchase.

31. HWA had no knowledge of any security interest of BFS in the Equipment.

32. HWA had no knowledge that its purchase of the Equipment from HOD would violate the rights of any other person.

33. HWA purchased the Equipment free of any security interest that may be asserted by BFS.

34. HWA, through its counsel notified BFS that HWA's rights in and to the Equipment have priority over any security interest therein that may be asserted by BFS, but BFS still refused to release the Equipment.

35. BFS wrongfully gained dominion and control over the Equipment when it directed HOD employees not to release the Equipment to HWA.

36. BFS wrongfully gained dominion and control over the Equipment when it took possession of the Equipment.

37. The Equipment was the property of HWA at the time BFS wrongfully gained dominion and control over the Equipment.

38. BFS has converted HWA's property for BFS's own use.

39. HWA demanded that BFS release the Equipment, but BFS has refused to do so.

40. There is and was no justification for BFS to take possession of HWA's Equipment and prevent HWA from utilizing the Equipment at HWA's facility.

41. HWA is entitled to all damages directly and proximately caused by BFS's conversion of HWA's Equipment.

42. The actions and conduct of BFS were in conscious and intentional disregard of and indifference to the rights of HWA, and BFS knew or should have known that such acts and conduct were reasonably likely to result in injury, damage, and harm to HWA.

43. As a direct and proximate result of BFS's conversion of HWA's property, HWA is entitled to have and recover compensatory damages from BFS in an amount to be determined

at trial, but in any event, exceeding $2,250,000.00.

## SECOND CAUSE OF ACTION
### Tortious Interference with Contract

44. HWA repeats and realleges each of the allegations contained in paragraphs 1-43 above, as if fully set forth herein.

45. HWA entered into an enforceable contract with HOD for the purchase of the Equipment.

46. BFS had knowledge of the existence of the contract between HWA and HOD.

47. BFS intentionally, and without legal right, interfered with the contract between HWA and HOD, and caused HOD to breach the contract by instructing HOD not to release the Equipment to HWA.

48. BFS intentionally, and without legal right, interfered with the contract between HWA and HOD, and caused HOD to breach the contract by taking possession of the Equipment.

49. BFS intentionally and knowingly interfered with the contract between HWA and HOD by its actions described herein, causing and inducing HOD to breach its contract with HWA.

50. BFS knew or should have known that instructing HOD not to release the Equipment to HWA and taking possession of HWA's Equipment itself would interfere the contract between HWA and HOD.

51. BFS's interference was wrongful because it had an improper objective or purpose to harm HWA as described herein, and BFS used wrongful means as described herein to cause injury to HWA.

52. BFS's tortious interference with the contract between HWA and HOD proximately caused HWA to sustain damages by virtue of the non-performance and breach of the contract.

53. As a direct and proximate result of BFS's misconduct, as described above, HWA has been and continues to be damaged in an amount to be determined at trial, but in any event, exceeding $2,250,000.00.

## THIRD CAUSE OF ACTION
### Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2

54. HWA repeats and realleges each of the allegations contained in paragraphs 1-48 above, as if fully set forth herein.

55. BFS possesses monopoly power in the relevant geographic market--a national market--for the supply of building products, and especially in the sub-market for building trusses. This affords BFS the ability to control prices and exclude competition in the relevant market.

56. BFS's Form 10K for 2023 states that BFS is reported to be "the largest building product supplier." In a February 2024 Earnings Call Corporate Presentation, BFS referred to itself as the "industry leader" in building supplies. According to its own press release issued for the fourth quarter of 2024, BFS is the "largest U.S. supplier of building products" and "prefabricated components," which include trusses and wall panels. Its reported net sales for 2023 is $17.1 billion.

57. BFS's website as of January 2025, and BFS's fourth quarter press release, report that BFS operates about 580 locations in 43 states, with 99 of those locations engaged in the business of supplying roof and floor trusses.

58. In an interview published on October 13, 2024, the former vice president of

Trussway Manufacturing, LLC, a company acquired by BFS, stated that the market size of the truss business is about $2 billion for multifamily structures and up to $8 billion if single-family construction is included. This acquired truss business company has been reported to be the number one truss company in the United States. According to a 2025 Market Research report by Kentley Insights, which is based on its review of surveys conducted by various governmental agencies, such as the Census, Bureau of Labor Statistics, and the IRS, BFS is among the top four truss companies.

59. According to a recent market report, the truss market is estimated to generate sales of $10.02 billion in 2024, with expected growth of up to $15.4 billion by 2032.

60. According to "HBS Dealer," a recognized news source in the hardware and building supply marketplace, BFS has about four times the number of truss plants operated by its nearest competitor.

61. According to a research report dated June 14, 2024, since its founding in 1998, BFS has acquired about 50 related businesses. BFS is currently in the process of expanding its truss business segment. It acquired two truss manufacturing companies in the first half of 2024. In the fourth quarter of 2024, BFS agreed to acquire Alpine Lumber Company, whose business includes prefabricated trusses.

62. A key part of BFS's goal of cornering the market in the truss business is the development of automation for the manufacture of trusses and the acquisition of companies that engage in such automation. As reported by research reports in the industry, including "HBS Dealer," a recognized news source in the hardware and building supply marketplace, as well as BFS's own published releases, BFS has invested about $130 million in manufacturing automation since 2020. According to the February 2024 Earnings Call Corporate Presentation,

BFS describes BFS as a "leader in truss automation," and, as a "competitive advantage," its goal is to "capitalize on automation investments for efficiency advantage in offsite fabrication," a key feature of its truss business.

63. As explained below, BFS's conduct concerning HOD, is obviously orchestrated to enhance its ability to corner the truss market and especially the automation aspect of that business which is a key to eliminating competition in that segment of the building supply industry.

64. As alleged above, BFS had extended a $10 million loan to HOD. BFS did so at a time when HOD's financial condition was very precarious and on the brink of collapse. BFS knew that given the state of HOD's poor financial condition, HOD's default on its repayment obligation was a virtual certainty.

65. BFS's conduct in extending a $10 million loan (coupled with a security interest) to HOD, a small equipment supplier whose financial difficulties were well known to BFS, can only reasonably be explained by BFS's true motive: HOD's new generation automated truss system technology, if acquired by BFS, would allow BFS to extend its monopoly power further by restricting this innovative technology to competitors. By causing the shut down of HOD upon HOD's eventual and certain default, and through BFS's collection of the HOD collateral for the HOD loan upon HOD's loan default, including HOD's proprietary information technology for the manufacture of trusses, BFS would be one of the only companies possessing this unique automated truss technology. BFS's competitors, who purchased such systems in the past from HOD, would be left with no means for the necessary training and servicing of the equipment and for obtaining needed parts, rendering their purchases virtually useless and leaving companies like HWA unable to compete in the marketplace against BFS. The unlawful withholding of the

Equipment from HWA exacerbates its inability to compete against BFS.

66. BFS has engaged in unlawful conduct designed to monopolize the building supply market in the United States, specifically the production of trusses used in the construction of new homes and prefabricated homes.

67. This exercise of monopoly power by BFS is prohibited under Section 2 of the Sherman Act.

68. BFS's aforesaid unlawful conduct has already and will in the very near future continue to have the effect of substantially reducing or eliminating competition in the building supply market in the United States, and especially for the production of trusses used in the construction of new homes and prefabricated homes. BFS's conduct would allow BFS to maintain artificially higher prices for consumers in the relevant market, who would not be able to obtain trusses from other vendors that otherwise could offer competitive and lower prices for the trusses.

69. BFS's anti-competitive conduct has had and will continue to have a direct and detrimental effect on HWA, causing it substantial losses in its current and future business.

70. The primary business of the principal shareholder of HWA builds and sells approximately 150 modular homes each year. HWA was formed for the principal purpose of acquiring the Equipment so as to reduce the cost of trusses that are used in the manufacture of the modular homes and also to be able to sell trusses to end users in the industry. Before the acquisition of the Equipment, the average cost for trusses per building ranged from approximately $8,000 to $14,000, depending on the size of the structure. Even at the lower cost of this range, the cost for the trusses was approximately $1.2 million in a typical year.

71. HWA's acquisition of the Equipment from HOD (which BFS refuses to deliver) would have eliminated approximately 23-25% in HWA's costs for the development of the modular homes it sells, a savings of at least $276,000 per year, because HWA would be able to build the trusses itself through the use of the HOD robotic system that was purchased. Hundreds of the same exact trusses would be manufactured by HWA and included in the sale of the modular homes being sold by HWA.

72. This efficiency and drastic reduction in the costs of manufacture are lost because of BFS's unlawful conduct, which is designed to increase its monopoly power and cause end users like HWA to pay BFS the higher price for trusses that BFS can command by virtue of its monopoly power. Thus, HWA now faces increased costs of manufacture because it is now being forced to pay the higher price for trusses from BFS and other similar manufacturers compared to the huge cost reduction that would be attendant to HWA's self-manufacture of trusses for its business.

73. In addition, BFS's conduct prevents smaller companies like HWA from competing effectively in the sale of trusses to end users.

74. For example, in anticipation of the acquisition of the Equipment from HOD, HWA had tentative deals in place with its framing contractor to provide the trusses to be self-manufactured by HWA to the framing contractor for all of the contractor's projects. These deals must now be abandoned because of the inability to obtain the Equipment HWA had purchased. In addition, HWA cannot offer trusses it would have been able to manufacture by itself to other end users in the construction field.

75. The damages to HWA over the near term (i.e., five years), both in the loss of the cost savings that would be attendant to HWA's self-manufacture of the trusses and its inability

to sell trusses to others is estimated to be in excess of $2 million.

76. BFS has engaged in the aforesaid unlawful conduct knowingly and purposefully, with the intent to harm competition in the relevant market and has caused actual injury to HWA.

77. By reason of BFS's violation of Section 2 of the Sherman Act, HWA is entitled to recover its damages from BFS in an amount to be determined at trial, but in any event, exceeding $2,250,000.00, trebled in accordance with 15 U.S.C. § 15, plus interest and reasonable attorneys' fees.

## DEMAND FOR JURY TRIAL

HWA hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## PRAYER FOR RELIEF

WHEREFORE, HWA respectfully requests that the Court enter judgment against BFS as follows:

1. Awarding HWA damages against BFS in an amount to be determined at trial;

2. Awarding attorney's fees and costs in favor of HWA; and

3. Awarding HWA such other and further relief as the Court deems just and proper.

Dated: March 27, 2025

MILLER NASH LLP

By: /s/ Louis V. Spiker
louis.spiker@millernash.com
*Attorneys for Plaintiff*